FILED
 2012 May-09  PM 04:07
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PAULA MABREY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:11-cv-1305-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Paula Mabrey ("Mabrey") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Mabrey filed her application for Title II Disability Insurance Benefits ("DIB") on August 17, 2007, originally alleging a disability onset date of June 30,

2004, (R. 15, 104), but subsequently amending the onset date to June 29, 2007, (R. 34). In support of her application, Mabrey contends that "degenerative disc disease of the cervical and lumbar spine and Fibromyalgia, [and] radiculopathy into her hips" makes her "unable to perform work[,] even sedentary work[,] due to the limitations and pain." (R. 34-35). The SSA initially denied Mabrey's application on December 21, 2007, (R. 55), and on January 11, 2008, Mabrey requested a hearing before the ALJ, (R. 63), which occurred on November 19, 2009. (R. 31-53). At the time of the hearing, Mabrey was 57 years old with a high school diploma. (R. 35). Mabrey has not engaged in substantial gainful activity since June 30, 2004. (R. 34). Her past relevant work includes light to medium and semi-skilled work as a unit clerk. (R. 50).

On December 14, 2009, the ALJ denied Mabrey's claims, (R. 15-24), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-3). Mabrey then filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

As a threshold matter, the court notes that the ALJ properly applied the five step analysis.  *See McDaniel*, 800 F.2d at 1030.  Initially, the ALJ determined that Mabrey had not engaged in substantial gainful activity since June 30, 2004, and

therefore met Step One. (R. 17).² The ALJ acknowledged that Mabrey's severe impairments of degenerative disc disease of the cervical and lumbar spine and fibromyalgia met Step Two. *Id*. The ALJ proceeded to the next step and found that Mabrey failed to satisfy Step Three since her impairments or combination of impairments neither met nor equaled the requirements for any listed impairment. (R. 20). Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Mabrey had the residual functional capacity ("RFC") to

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant is able to occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk about six hours in an eight hour work day, sit about six hours in an eight hour workday, and perform unlimited pushing and pulling. The claimant is able to frequently climb ramp/stairs, but never ladder, rope, or scaffolds. She could frequently balance, stoop, kneel, or crawl. The claimant has no manipulative, visual, or communicative limitations. She should avoid concentrated exposure to extreme cold. Finally, the claimant's RFC is reduced because she experiences mild to moderate pain.

(R. 21). Further, the ALJ held that Mabrey "is capable of performing past relevant work as a unit clerk. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity." (R. 23). Because the ALJ answered Step Four in the negative, the ALJ determined that

---

² While Mabrey amended the onset date to June 29, 2007 at the ALJ Hearing, (R. 34), the ALJ apparently considered all medical evidence from Mabrey's original onset date of June 30, 2004.

Mabrey is not disabled. (R. 24); *see also McDaniel*, 800 F.2d at 1030. As it relates to the pain standard, the ALJ found that Mabrey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mabrey's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (R. 22).

## V.  Analysis

The court turns now to Mabrey's contentions of error. *See* doc. 8. Mabrey argues that the ALJ (1) failed to properly apply the *Hand* pain standard, *id*. at 8; (2) failed to give proper weight to a treating physician, *id*. at 10; and (3) failed to properly apply the medical-vocational guidelines for disability, *id*. at 13. The court has reviewed the entire record and Mabrey's contentions and finds no error. Accordingly, for the reasons discussed below, the ALJ's decision is supported by substantial evidence because it gave sufficient weight to Mabrey's treating chiropractor, properly applied the pain standard, and correctly utilized the medical-vocational guidelines.

A.     *Weight Accorded Dr. Myers' Physical Capacities Evaluation*

To support her disability claim, Mabrey primarily relies on the February 7, 2008, Physical Capacities Evaluation ("PCE") submitted by her "long-term treating source," Dr. Mark Myers, D.C. Doc. 8, at 6 (citing R. 339-44). In the

PCE, Dr. Myers, a chiropractor, provided that Mabrey could only lift and/or carry 5 pounds occasionally or less, could sit for 2 hours during an 8-hour work day, and could stand for only 3 hours during an 8-hour work day.  (R. 339).  Moreover, Dr. Myers maintained that Mabrey could "never" perform the following: pushing and pulling movements, climbing (stairs or ladders) and balancing, gross manipulation (grasping, twisting, and handling), bending, stooping (bending downward and forward from the waist), reaching (including overhead), work around hazardous machinery, work around dust, allergens, fumes, etc. *Id.*  Dr. Myers also provided that Mabrey could "occasionally" perform fine manipulation (finger dexterity) and could "frequently" operate motor vehicles. *Id.*  Dr. Myers concluded that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities." (R. 340).  Furthermore, Dr. Myers stated that physical activity "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks." *Id.*  Mabrey also submits an October 1, 2007 report from Dr. Myers where he concluded that "[i]n my opinion, the patients'[sic] condition is of a permanent nature.  She has limited capacity for the following: bending (very light weights, only); sitting (no longer than 30 minutes, consecutively); prolonged standing and walking; reading/desk work (increases neck/upper back pain); mental concentration (affected by pain)." (R. 258-59).

However, the ALJ "afforded Dr. Myer's[sic] opinions little to no weight as they are inconsistent with the medical evidence of record as a whole as well as his own treatment records." (R. 23). Mabrey contends that this finding constitutes error because "the opinion of a treating physician is to be given substantial weight in determining disability." Doc. 8, at 10 (citing *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) ("[I]t is not only legally relevant but unquestionably logical that the opinions, diagnosis and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over considerable length of time, should be given considerable weight.")). While a treating physician's medical opinions are certainly afford great deference, Mabrey overlooks that the federal regulations establish that Dr. Myers is not a treating *physician*. Generally, "[m]edical opinions are statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of your impairments," 20 C.F.R. § 404.1513(a)(2) (emphasis added), and in weighing medical opinions, more weight is given "to opinions from [] treating sources." *See* 20 C.F.R. § 404.1527(c)(2). However, acceptable "medical sources" are defined as—for purposes here—"licensed physicians (medical or osteopathic doctors)." 20 C.F.R. § 404.1513(a)(1). Conversely,

"chiropractors" are listed as "other sources." 20 C.F.R. § 404.1513(d)(1). Thus, as a chiropractor is not considered an acceptable medical source, the federal regulations and relevant case law impose no requirement that the ALJ give Dr. Myers' opinion substantial weight. *See also Crawford v. Comm'n of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004) (noting that the federal regulations exclude chiropractors from the list of "'acceptable medical sources' whose opinions may be considered in determining the existence of an impairment"); Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d)."). Therefore, the ALJ committed no error when he "afforded Dr. Myer's[sic] opinions little to no weight . . . ." (R. 23).

Morever, even if the court considers Dr. Myers an "acceptable medical source," the ALJ's finding that Myers' conclusions are inconsistent with the medical record as a whole is supported by substantial evidence. First, the ALJ cites medical records from Mabrey's rheumatologist Dr. C. Douglas Bell—who Mabrey visited regularly in 2008 and 2009. (R. 344-49, 411-12). Dr. Bell's July 24, 2008 treatment notes provide that Mabrey "is in no acute distress." (R. 349).

Similarly, Dr. Bell's September 12, 2008 treatment notes state that Mabrey "is in no acute distress. There is tenderness over the neck, shoulders, and lateral hips." (R. 348). Dr. Bell's November 14, 2008 notes state "Ms. Maybrey[sic] reports that she is some better. She sleeps better and she is exercising regularly. She indicates she had access to the YMCA exercise program sheets and programs. She uses a ball regularly." (R. 347). The November 2008 treatment notes also provide that certain prescription pain medications have "helped significantly for pain and she takes it only periodically." *Id.* On February 13, 2009, Dr. Bell notes that Mabrey complained of "neck, shoulder, and lower back, as well as left hip discomfort. With medications, she sleeps fairly well and is doing some exercises . . . . There is good range of motion in the shoulders. The left scapula is tender with palpation. The lower back on the left side near the SI joint is tender. She has good range of motion of the left hip and some findings to suggest trochanteric bursitis." (R. 412). Finally, on May 11, 2009, Mabrey's treatment notes reveal "neck and shoulder discomfort," but again, "no acute distress." (R. 411). As is evident, Dr. Bell's treatment notes support the ALJ's finding.

      The ALJ also relied on the November 3, 2007 medical report by Dr. Ryan C. Aaron, M.D. (R. 18-19, 295-98). In his report, Dr. Aaron provided that Mabrey suffers from chronic back and neck pain that has progressively worsened

over the last 7-10 years, and to combat this pain, she received epidural blocks in her neck, triggerpoint injections in the cervical paraspinal muscles, and lumbar epidural blocks. (R. 295-96). However, he also stated that Mabrey "has recently started taking Darvocet N-100, which takes her pain from 7/10 to 2/10." *Id.* As it relates to general appearance and observations, Dr. Aaron found that Mabrey "was able to walk into the examination room without difficulty. She does not appear to be in any acute distress . . . . She is able to take off and put on her socks and shoes. She is able to get [on] and off the examination table without assistance." (R. 296). Moreover, Dr. Aaron noted that "Romberg was absent. Gait is normal." (R. 297). For range of motion in the spine, Dr. Aaron reported that Mabrey "is able to perform full range of motion in the cervical region, but she does complain of pain," *id.*, and for range of motion in the shoulder joints, "forward flexation 0-180 degrees, extension 0-50 degrees, abduction 0-180 degrees, adduction 0-50 degrees, internal rotation 0-90 degrees, external rotation 0-90 degrees bilaterally," (R. 298). Dr. Aaron found Mabrey tender to certain palpations, but that she retained "5/5 muscle strength in all muscle groups." *Id.* And finally, the court agrees with the ALJ that "[t]he records [of Dr. Aaron] do not describe any intractable pain." (R. 22).

      Furthermore, as it relates to discrediting the opinion evidence of Dr. Myers

for Mabrey's RFC, the ALJ concluded that "the opinion of the State Disability Determination Service assessment of residual functional capacity [] is consistent with the evidence of record as a whole." (R. 23). Mabrey, on the other hand, argues that the "ALJ determines an RFC by placing the greatest weight on the opinion of a state agency worker, an individual who never even saw Plaintiff, much less examined her. Perhaps most disconcerting, this individual is not a doctor, but rather a lay worker for the state agency." Doc. 8, at 11 (citations omitted). However, Mabrey's contention is misplaced because the ALJ accepted the agency's RFC after finding it supported by the objective medical record. In other words, the ALJ concluded that the objective medical evidence supports the opinion evidence of the state agency rather than the opinion evidence of Dr. Myers. *See Crawford*, 363 F.3d at 1160 (accepting ALJ's decision to discount a chiropractor's opinion because it was unsupported by the medical evidence). Based on Dr. Bell and Dr. Aaron's treatment notes, substantial evidence justifies the ALJ's conclusion.

Additionally, the ALJ gave Dr. Myers' PCE "little to no weight" because the opinions in this evaluation were inconsistent with Dr. Myers' own treatment notes. (R. 23). Indeed, while Dr. Myers concluded in the PCE that Mabrey's pain distracted from tasks or could even cause abandonment of tasks, Dr. Myers'

"objective" treatment notes only describe Mabrey as suffering from mild to moderate pain levels. (R. 23, 340, 357-71, 427-40). Given that Dr. Myers is *not* an acceptable medical source and taking the objective *medical* evidence as a whole, the inconsistencies between Dr. Myers' conclusory opinions and treatment notes provide additional support to the ALJ's conclusions. *See Crawford*, 363 F.3d at 1160 (discrediting chiropractor's finding of a disability based, in part, on inconsistent treatment notes).

B.   *Application of Pain Standard*

Mabrey also contends that the ALJ improperly applied the *Hand* pain standard. In support, Mabrey asserts: "not only has Plaintiff complained of chronic and severe pain, but Plaintiff's treating physician has noted an underlying medical condition, and has also noted the severity of Plaintiff's condition, thus presenting evidence that Plaintiff's medical condition is of such a severity that it can reasonably be expected to cause the alleged pain." Doc. 8, at 9. The court first reiterates the impropriety of relying on Dr. Myers as a "treating physician," *see supra*; *Crawford*, 363 F.3d at 1160, and, accordingly, finds that the ALJ properly refused to give substantial weight to the "medical evidence" espoused by Dr. Myers.

Moreover, in considering the objective medical evidence provided by

acceptable medical sources, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 22). There is substantial evidence to support the ALJ's conclusion. Namely, Mabrey's rheumatologist, Dr. Bell, provided that Mabrey revealed no acute distress in July or September 2008, (R. 348-49); she exercised regularly and her pain medications helped significantly in November 2008, (R. 347); she had good range of shoulder motion and exercised in February 2009, (R. 412); and she had neck and shoulder discomfort in May 2009, but again, no acute distress, (R. 411). Similarly, Dr. Aaron found Mabrey in no acute distress, with 5/5 muscle strength in all muscle groups, and with full range of motion in the spine despite some complaints of pain. (R. 295-98). Dr. Aaron's treatment notes also provide a negative Romberg test and normal gait, and that Darvocet N-100 reduced Mabrey's pain to 2/10. (R. 295, 297). Thus, the objective medical evidence supports the ALJ's decision to discredit Mabrey's subjective allegations of disabling pain. As such, the ALJ properly applied the Eleventh Circuit's pain standard.

C.   *Medical Vocational Guidelines*

      Finally, Mabrey contends that the ALJ erred by failing to find her disabled

under the Medical Vocational Guidelines—§§ 202.06 or 201.06 (GRID Tables 1 and 2). Doc. 8, at 13. More specifically,

> [Mabrey] was fifty seven years of age at the time of the hearing and has a high school education. Her past relevant work as described by the vocation expert consisted of unit clerk, performed at the light to medium exertional levels and semi skilled in nature. In addition, the VE testified that there were no transferrable skills from the past work. Plaintiff submits that under the ALJ's RFC findings for the ability to perform no more than light work, she should have met the GRID Rule at age fifty five, and thus should have been found disabled from that age.

*Id.* (citations omitted). The court disagrees. GRID Tables 1 and 2 are applicable for disability determinations when a claimant's RFC is limited to precisely "sedentary" (Table 1) or "light" (Table 2) work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled . . . . Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."). *See also* 20 C.F.R. § 404.1569. As such, the federal regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and

small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  The federal regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

Here, however, the ALJ determined that Mabrey could perform "light work," but reduced Mabrey's RFC "because she experiences mild to moderate pain."  (R. 21).  *See* 20 C.F.R. § 404.1569a ("Your impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit your ability to meet certain demands of jobs.").  Pain limitations are considered "nonexertional" limitations, *Phillips v. Barnhart*, 357 F.3d 1232, 1242 n.11 (11th Cir. 2004), and "[i]f nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors *but also must introduce independent evidence, preferably through a vocational expert's testimony, of the*

existence of jobs in the national economy that the claimant can perform." *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) (emphasis added). Therefore, the ALJ properly utilized a vocational expert to support his finding that Mabrey "is capable of performing past relevant work as a unit clerk," (R. 23, 48-52), rather than relying solely on the GRID tables.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Mabrey is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 9th day of May, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE